UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MICHAEL ALAN RICKER,**

    **Plaintiff,**

v.                                                                         **Case No: 5:13-cv-479-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying the applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The Court has reviewed the record, the memoranda (Docs. 15 & 17), and the applicable law. For the reasons set forth herein, the Commissioner's decision is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

### I. Procedural History and Summary of the ALJ's Decision

On July 6, 2010, Plaintiff filed applications for DIB (Tr. 154-60) and SSI (Tr. 161-67), alleging a disability onset date of July 7, 2009. (Tr. 25 & 51). The Social Security Administration ("SSA") denied his applications initially (Tr. 95-97) and upon reconsideration. (Tr. 104-105). Plaintiff requested a hearing before an Administrative Law Judge (Tr. 110), and on March 14, 2012, ALJ Ken Terry ("the ALJ") held a hearing. (Tr. 41-90). On April 13, 2012, the ALJ issued an unfavorable decision. (Tr. 22-40).

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 7, 2009, the alleged onset date.  (Tr. 27).  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status post lumbar fusion, fibromyalgia, and a history of alcohol abuse.  (Tr. 27).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets of medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 28).  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 C.F.R. 4041567(b) and 416.967(b).  Specifically, the claimant has the ability to lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently.  He can sit for four hours at a time and for a total of six hour during an eight-hour workday; and he can stand and walk for two hours at a time and for a total of six hours during an eight-hour workday.  He is precluded from climbing ropes, ladders, and scaffolds; but he can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  He has no limitations regarding manipulation, vision or communication, but has environmental limitations precluding him from concentrated exposure to extreme cold and humidity.  Mentally he has no significant limitations.

(Tr. 29).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a desk clerk, convenience store clerk, and night auditor, which does not require the performance of work-related activities precluded by the claimant's RFC.  (Tr. 33).  In addition, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were more jobs existing in significant numbers in the national economy that Plaintiff could perform, including ticket taker, weight recorder and food assembler.  (Tr. 34-35).  Thus, the ALJ found that Plaintiff was not disabled from July 7, 2009, through the date of the decision.  (Tr. 35).

The Appeals Council denied Plaintiff's Request for Review (Tr. 4-9).  After exhausting his administrative remedies, Plaintiff timely filed the instant appeal.  (Doc. 1).

## II. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote,* 67 F.3d at 1560;

*see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### III. Analysis

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ failed to properly weigh the medical evidence. Second, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's credibility.

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court submits that the ALJ properly considered the medical evidence, and substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints of pain.

#### A. *The ALJ properly evaluated the medical evidence.*

Plaintiff argues that the ALJ failed to properly weigh the medical evidence. (Doc. 15, p. 10). Specifically, Plaintiff contends that the ALJ erred in considering the opinions from treating physician, Michael D. Timmel, M.D.; consultative examiner, Alex C. Perdomo, M.D.; the non-examining state agency medical consultant, Bettye Stanley, D.O; and the physical medicine specialist James Shea, M.D. For the reasons discussed below, I submit that the ALJ properly considered these opinions and articulated reasons supported by substantial evidence for either discrediting or relying upon them.

The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists "when the: (1) treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so.  *Id*. at 1240-41.

At issue here is the ALJ's consideration of the medical source opinions of Dr. Timmel, Dr. Perdomo, Dr. Stanley, and Dr. Shea.

### 1. Dr. Timmel, Treating Physician.

Plaintiff contends that the ALJ failed to properly consider the opinions of Dr. Timmel when he afforded them "little to no weight."  (Tr. 32).

Dr. Timmel completed a Multiple Impairment Questionnaire ("MIQ") on March 9, 2011 stating that Plaintiff would be absent from work "more than three times a month" (Tr. 313) and was "unable to work."  (Tr. 312).  One year later, in a medical source statement, Dr. Timmel noted that Plaintiff had anxiety, fibromyalgia, low back pain, and restless leg syndrome.  (Tr. 337).  As a result of Plaintiff's impairments, Dr. Timmel found that, if Plaintiff were placed in a normal competitive five day a week work environment on a sustained basis, he could only sit for one hour total in an eight-hour work-day and stand/walk for up to one hour total in an eight-hour day.  Dr. Timmel opined that Plaintiff should not sit continuously in a work setting and would need to get up and move around every hour before being able to sit again.  In addition, Plaintiff should not stand/walk continuously in a work setting.  Dr. Timmel also found that Plaintiff should only lift and carry up to five to ten pounds occasionally, and had significant marked limitations with both the right and left upper extremities in performing grasping, turning, and twisting objects; using fingers/hands for fine manipulations; and using arms for reaching, including overhead.

Plaintiff would also need to avoid fumes, gases, dust, and temperature extremes. Plaintiff's condition also precluded him from pushing, pulling, kneeling, bending, and stooping. His impairments would likely cause him to miss more than three days of work per month.

The ALJ properly afforded little weight to treating source Dr. Timmel's opinion because the opinion was: not supported by Dr. Timmel's own treatment notes or the objective medical evidence; inconsistent with the lack of more aggressive treatments; and inconsistent with the other evidence in the record from Plaintiff's own testimony regarding his acknowledged activities.

In his opinion, the ALJ thoroughly reviewed and summarized Dr. Timmel's treatment notes and diagnoses. (Tr. 30-31). Dr. Timmel reported that Plaintiff had been his patient since April 2005. (Tr. 337). Treatment notes beginning in 2009 reveal that Plaintiff presented with shoulder pain, intermittent spasms, chronic intermittent low back pain, hip pain, anxiety, and depression. (Tr. 271-73, 276-81). Dr. Timmel treated these symptoms with pain and psychiatric medications. While the treatment notes state that Plaintiff complained of pain, on nearly every visit, Dr. Timmel wrote in the "Objective" section that Plaintiff was in no acute distress. (Tr. 271, 272, 277, 281). It was not until July 2010, that Dr. Timmel assessed Plaintiff's symptoms as suggestive of fibromyalgia. (Tr. 273). On that occasion, Plaintiff reported bilateral shoulder and hip pain, diffuse myalgias, restless leg syndrome, and cramping-type pain that improved with walking. (Tr. 272). After an examination, Dr. Timmel found Plaintiff had: no acute distress, a regular cardiovascular rate and rhythm without murmur, clear lungs, a supple neck without lymphadenopathy, some trigger points upon palpation of the upper and lower extremities, no swelling of the extremities, clear tympanic membranes, moderate nasal congestion, bilateral sinus pain, and a clear throat. (Tr. 272). Among other notes, he opined that Plaintiff's symptoms were

"suggestive of fibromyalgia" and prescribed Cymbalta. (Tr. 273). Plaintiff's blood tests showed a negative ANA direct and normal sedimentation rate. (Tr. 274-75).

At a July follow-up visit, Plaintiff stated that Requip significantly improved his restless leg cramping, he had less movement at night, and Cymbalta decreased his myalgias and arthralgias. (Tr. 271). Dr. Timmel did not diagnose fibromyalgia at that visit, though he noted Plaintiff's chronic low back pain and that he would continue the Cymbalta and Requip prescriptions. (Tr. 271). Two months later, Plaintiff presented with "concerns about slow progression of his fibromyalgia," but told Dr. Timmel that he saw initial improvement with the Cymbalta and felt it was helping his depression and anxiety. (Tr. 276). In addition, Plaintiff reported he generally had two to three good days per week with "tolerable discomfort." (Tr. 276). Diagnosing fibromyalgia for only the second time, Dr. Timmel noted some trigger point tenderness on palpation and noted that Plaintiff "may need referral to rheumatologist or pain specialist." (Tr. 276). Notably, Dr. Timmel never specified the number of trigger points in July or September 2010.

Upon review of Dr. Timmel's treatment notes and the medical evidence, the ALJ concluded that the medical evidence failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. (Tr. 30). Specifically, the ALJ pointed to the lack of "significant," "aggressive," treatments, as well as no additional surgeries for Plaintiff's back pain since his initial back surgery. (Tr. 32). Further, the ALJ noted the fact that Dr. Timmel noted "some" positive trigger points, but did not specify a number. (Tr. 32); *Harris v. Astrue*, 546 F. Supp. 2d 1267, 1282 (N.D. Fla. 2008) ("a person can be affirmatively diagnosed with fibromyalgia if he … has widespread pain in combination with tenderness in at least eleven of eighteen specific tender point

sites"). Further, the examining physiatrist, Dr. Shea, did not specifically diagnose fibromyalgia. (Tr. 32).

Although Plaintiff points out that it is error for an ALJ to discount opinions from a treating physician based on a lack of clinical and diagnostic evidence in the setting of fibromyalgia because the condition does not cause alarming clinical or diagnostic abnormalities, *see* (Doc. 15, p. 12); *Price v. Astrue*, No. 3:09-cv-59, 2010 WL 3715643 *7 (M.D. Ga. Aug. 16, 2010), the lack of medical evidence was not the sole reason the ALJ assigned little to no weight to Dr. Timmel's opinion. As the Eleventh Circuit requires, the ALJ showed good cause not to give the treating physician's opinion substantial weight. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (explaining, "[w]hile a treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent, the ALJ ... adequately articulated specific justification for discounting [the treating physician's] opinion."). Specifically, the opinion was inconsistent with Dr. Timmel's own notes, the other evidence in the record from Plaintiff's own testimony, and non-examining state agency medical consultant Dr. Stanley's findings. *See Good v. Astrue*, 240 F. App'x 399, 403 (11th Cir. 2007) (affirming denial of disability where ALJ rejected treating physician's opinion due to its inconsistency with physician's own notes, other evidence in the record from plaintiff's own testimony, and findings of non-examining agency consultants). Dr. Timmel's opinion was also inconsistent with the findings of Dr. Perdomo, who opined that Plaintiff could perform light work. (Tr. 242-44, 302).

In addition to the inconsistencies between Dr. Timmel's opinion and the record, the ALJ found Plaintiff's reported activities inconsistent with a total inability to work. (Tr. 32). Plaintiff's own testimony that he engaged in activities such as walking and playing with his dog, attending Alcoholics Anonymous meetings once a week, doing some yard work, washing the car,

shopping occasionally with his wife, and carrying groceries undermined Dr. Timmel's opinion that Plaintiff could not work.   (Tr. 32).   Moreover, the Eleventh Circuit has affirmed ALJs' decisions to give diminished weight to treating physicians' opinions where the opinions "were contrary to [the plaintiff's] own statements and testimony."   *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (finding ALJ justified in concluding that plaintiff could perform daily job activities, where plaintiff testified that she went shopping, took care of her pets, and regularly used her computer); *Jarrett v. Comm'r of Soc. Sec.,* 422 Fed. Appx. 869, 873 (11th Cir. 2011) (citing *Phillips,* 357 F.3d at 1241) (treating physician's opinion is not entitled to great weight if evidence of a claimant's daily activities contradicts the opinion).

Therefore, substantial evidence supports the ALJ's decision to give Dr. Timmel's opinion little weight, and to consequently afford greater weight to the consultative examining physician and state agency medical consultant, which were consistent with the record as a whole.   It is, after all, the duty of the ALJ to weigh all of the evidence and resolve any inconsistencies in the record. *See* 20 C.F.R. 404.1527(c)(2).

### 2.  Dr. Perdomo, Consultative Examining Physician.

Plaintiff argues that the ALJ erred by relying on the opinion of Dr. Perdomo, a consultative examiner.   Specifically, Plaintiff asserts that it is not clear that Dr. Perdomo's opinion supports the ALJ's RFC finding, as he stated that Plaintiff could "stand, walk, and sit for 3 to 4 hours in an eight-hour workday."   (Doc. 15, p. 13; Tr. 243).   Plaintiff argues that the opinion is unclear to the extent it does not specify whether Plaintiff could stand, walk, and sit for three to four hours separately or in combination during an eight-hour workday.   (Doc. 15, p. 13).   This lack of clarity, Plaintiff claims, should have prompted the ALJ to request clarification from Dr. Perdomo.

Dr. Perdomo's examination revealed that Plaintiff was seen "walking down the hallway without any difficulties" and without assistance, sat comfortably during the exam, and got on and off the examining table "without any problems." (Tr. 31, 242). Plaintiff demonstrated a decreased range of motion of the shoulders and hips, as well as the cervical and thoracolumbar spine. (Tr. 31, 243). Dr. Perdomo diagnosed Plaintiff with a history of chronic neck pain with mild musculoskeletal functional limitations on physical examination; history of chronic lower back pain with moderate to severe musculoskeletal functional limitations on physical examination; fibromyalgia; anxiety; depression; insomnia; restless leg syndrome; and nicotine dependence. (Tr. 31, 243). Dr. Perdomo recommended that Plaintiff engage in physical therapy and adopt a home exercise program to aid his back and general conditioning. (Tr. 243). Further, he opined that Plaintiff could "stand, walk, and sit for 3 to 4 hours in an eight-hour workday with normal breaks. He can occasionally lift and carry, but should limit the weight lifting to no more than 15 to 20 pounds. He should also avoid repetitive bending, stooping, or crouching … [and] avoid repetitive use of the hands." (Tr. 244).

The ALJ properly accorded Dr. Perdomo's opinion great weight. As the Eleventh Circuit has held, it is appropriate to allocate significant weight to a consultative examining physician where the record fails to support a treating physician's opinion. *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 408 (11th Cir. 2010) ("Although an ALJ generally gives a treating physician's opinion more weight than an examining physician's opinion, the ALJ is not required to do so, especially where, as here, the ALJ discounted the treating physician's opinion for good cause."). The ALJ relied on Dr. Perdomo's opinion because it was consistent with both Dr. Perdomo's examination of Plaintiff and the record as a whole. (Tr. 33). Importantly, Dr. Perdomo's opinion is consistent with Dr. Stanley and the single decision maker's finding that Plaintiff could perform

light work (Tr. 33, 263-270), as well as Plaintiff's own statements about his daily activities. The Court finds that, because Dr. Perdomo's exam findings were sufficient to conclude that Plaintiff could perform light work, the ALJ was not required to contact Dr. Perdomo for clarification of his opinion.

Because the ALJ articulated good cause for discounting the treating physician's opinion, the ALJ did not err in giving more weight to the consulting, examining physician's opinion. Thus, the ALJ properly weighed Dr. Perdomo's opinion.

### 3. Dr. Stanley, State Agency Medical Consultant.

Plaintiff argues that the ALJ erred in according significant weight to the opinion of Dr. Stanley, the non-examining state agency doctor, opinion.[2] The ALJ accorded significant weight to Dr. Stanley's opinion, as it was consistent with the record as a whole. (Tr. 33, 264-70, 302). In affirming a single decision maker's ("SDM") December 2010 assessment,[3] Dr. Stanley opined that Plaintiff is capable of light work with occasional postural activities, but never climbing ropes, ladders, or scaffolds; frequent reaching; and avoidance of concentrated exposure to extreme cold and humidity. (Tr. 33, 302).

According to the Social Security Regulations, "[f]indings of fact made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." *Cox v. Astrue*, 811-CV-02860-T-35AEP, 2013 WL 1181448 (M.D. Fla. Feb. 7, 2013) report and recommendation adopted, 8:11-CV-2860-T35-AEP, 2013 WL 1181447 (M.D. Fla. Mar. 14, 2013) (quoting S.S.R. 96–6p, 1996 WL 374180, at * 1 (July 2, 1996)). In addition, state agency medical

---

[2] Plaintiff does not challenge the ALJ's decision to discount the portion of the opinion regarding limited reaching findings. (Tr. 33). Thus, the Court considers any objection on that point waived.

[3] The SDM reviewed Dr. Perdomo's report and opined that Plaintiff could perform light work. (Tr. 263-70).

physicians' opinions may be entitled to greater weight than the opinions of treating or examining sources. S.S.R. 96–6p, 1996 WL 374180, at *3. The weight afforded to state agency medical physicians' opinions varies, depending on the extent to which the findings are "supported by clinical findings and [are] consistent with other evidence." *Jarrett,* 422 Fed. Appx. at 873 (citing 20 C.F.R. § 404.1527(d) (3)-(4); *Crawford,* 363 F.3d at 1158, 1160). "[W]here a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's report." *Jarrett,* 422 Fed. Appx. at 873 (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)).

The ALJ reviewed the entire record and found Dr. Stanley's opinion consistent with the record as a whole—particularly with Dr. Perdomo's opinion, to which the ALJ afforded significant weight. (Tr. 30-33). Thus, consistent with Eleventh Circuit precedent, the Court finds that the ALJ properly weighed Dr. Stanley's opinion.

### 4. Dr. Shea, Physical Medicine Specialist.

Plaintiff argues that the ALJ erred by failing to weigh the opinions from the examining specialist, Dr. Shea. (Doc. 15, p. 16). Both parties agree that Dr. Shea's opinions are consistent with those of Dr. Timmel. (Doc. 15, p. 16; Doc. 17, p. 15). As noted above, the ALJ allocated little to no weight to Dr. Timmel's opinion, as it was inconsistent with his own treatment notes as well as Plaintiff's own testimony regarding his daily activities. (Tr. 32). Although the ALJ failed to assign a particular weight to Dr. Shea's medical report (Tr. 333-36), he explicitly reviewed Dr. Shea's findings in his opinion. (Tr. 31).

Dr. Shea's opinion documented Plaintiff's complaints of diffuse pain throughout his body, neck pain, bilateral shoulder pain, bilateral tingling in his fourth and fifth digits, mid back pain, bilateral hip pain, and radiating pain down his right leg, with muscle spasms in his left shoulder

and arm and left leg.[4]  (Tr. 31, 333).  Plaintiff also reported numbness and restless leg syndrome. (Tr. 31, 333).  Upon examination, Dr. Shea noted that Plaintiff was in no acute distress, had normal posture and gait, and a slightly elevated left shoulder.  In addition, he noted Plaintiff had tenderness to palpation over the trapezius muscles, left and right cervical paraspinals, but was non-tender to palpation over the greater occipital nerves, supraspinous ligament, spinous processes, and rhomboid muscles.  (Tr. 31, 333).  Plaintiff had palpable muscle spasms over the lumbar paraspinals.  His straight leg raises were negative to ninety degrees bilaterally in a sitting position.  (Tr. 335).  He had a reduced range of motion in the cervical and lumbar spine, 5/5 strength in the upper and lower extremities, but 4/5 on the left hip flexor, and decreased pin prick sensation at L3 on the right compared to the left leg.  (Tr. 336).  After the examination, Dr. Shea diagnosed Plaintiff with failed back syndrome, status post lumbar spine fusion, chronic neck pain, and restless leg syndrome.  (Tr. 31, 336).

As both parties conclude, Dr. Shea's opinions are consistent with Dr. Timmel's opinions, where both physicians found that Plaintiff had significant limitations in his ability to sit, stand, walk, lift more than ten pounds, and manipulate objects.  (Tr. 271-3, 276-81, 333-36, 340).  As noted extensively above, these opinions are inconsistent with the record as a whole and are not supported by the medical evidence or Plaintiff's own testimony regarding his activities.

The Court finds that the ALJ implicitly discredited Dr. Shea because the ALJ discredited Dr. Timmel, and Dr. Shea's opinion aligned with that of Dr. Timmel.  And even if the ALJ did not discredit Dr. Shea's opinion, it is duplicative of Dr. Timmel's discredited opinion, and, thus, remanding for the ALJ to explicitly state that Dr. Shea's opinion was not supported by the record

---

[4] Dr. Shea did not have Plaintiff's medical records at the time he completed Plaintiff's medical evaluation report.  Following the completion of that report, however, he had the opportunity to review Plaintiff's records, and, based on the consistency of reports between the patient and his medical providers, Dr. Shea's assessment regarding Plaintiff's medical condition remained the same.  (Tr. 340).

would waste judicial resources and not affect the outcome of the case. Although Plaintiff correctly notes that the ALJ failed to assign weight to Dr. Shea's opinion, when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand. *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975 (11th Cir. 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). The Eleventh Circuit has found that where an ALJ has expressly considered the evidence on which the physician relied in forming his opinion, and where that evidence, along with other objective medical evidence in the record, including the plaintiff's own testimony, showed that the plaintiff was not disabled and incapable of work, the ALJ's failure to specifically reference the physician's opinion did not affect the result in the case. *Id.*

Similarly, the ALJ's failure to explicitly assign weight to Dr. Shea's opinion, where he expressly considered the evidence and Dr. Shea's findings in the opinion (Tr. 31), was harmless error and did not affect the result in this case.

### B. The ALJ properly evaluated Plaintiff's credibility.

Plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence. (Doc. 15). The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Tr. 31-32). When, as here, an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold" assessment to Plaintiff's subjective complaints. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions that could be expected to give rise to symptoms. (Tr. 31-32). Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's subjective complaints were not fully credible considering Plaintiff's: (1) medical records that were inconsistent with complaints of disabling pain; (2) description of his daily activities; and (3) receipt of unemployment benefits.

The ALJ found that the "medical evidence of record does not entirely support the credibility of the claimant's allegations regarding his physical impairments." (Tr. 32). While the objective medical findings revealed some limitations, the ALJ concluded Plaintiff was not limited to the extent he alleged. (Tr. 32). As discussed above, *see supra* III.A, the ALJ properly evaluated the medical evidence of record and concluded that it did not support a finding of total disability.

The ALJ properly considered Plaintiff's self-reported activities in evaluating his claims of disabling pain. *See Dyer v. Barnhart*, 395 F.3d 1206, 1209-12 (11th Cir. 2005); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The Eleventh Circuit has found that self-reported daily activities, including household chores, light yard work, and shopping, may undermine a Plaintiff's claim about the severity of his impairments. *Evans v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 521, 524 (11th Cir. 2014) (doctor's opinion "was contradicted by [Plaintiff's] self-reported daily activities, which included various household chores, light yard work, driving, shopping, visiting with friends and family, and playing chess daily"); *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 948 (11th Cir. 2010) (affirming decision in which

ALJ found claimant's testimony regarding the frequency and intensity of her symptoms could not be fully credited because it was inconsistent with her testimony about her daily activities and with the medical evidence of record). The ALJ found Plaintiff's "activities inconsistent with a total inability to work." (Tr. 32). In particular, Plaintiff reported playing with and feeding his dog, attending Alcoholics Anonymous meetings, doing some yard work and laundry, shopping with his wife, and carrying groceries. (Tr. 32, 74, 79-81). Plaintiff also testified that he could only sit in a chair for 20-30 minutes without needing to stand. (Tr. 71). The ALJ noted during the hearing, however, that Plaintiff had been sitting in the chair, testifying, for longer than that period of time. (Tr. 71). Based on these daily activities, the ALJ expressly found that Plaintiff's subjective complaints were "not consistent" with his assertions that he was "incapable of doing anything around the house." (Tr. 32).

In addition to finding Plaintiff's testimony regarding his daily activities inconsistent with a finding of total disability, the ALJ discredited Plaintiff's subjective complaints because he received unemployment benefits after his alleged onset date of July 7, 2009. (Tr. 32, 51-56). When the ALJ questioned Plaintiff regarding whether he thought he was able to work after the onset date, Plaintiff affirmed that he had looked for full-time work, stating that, at that point, he "was still looking for something that [he] could do." (Tr. 56).

Further, Plaintiff admitted that he stopped working because he was laid off, not because his condition prohibited him from performing his job. (Tr. 206, 333). During the time Plaintiff claims he could not work due to his medical conditions, he collected unemployment benefits and looked for a light job, particularly in retail sales. The ALJ note that although Plaintiff alleged disability beginning the day he was laid off, "not only did he look for work, but he did not file for disability benefits until over a year after being laid off." (Tr. 32). Courts in the Eleventh Circuit,

in addition to several circuit courts, have found a claimant's receipt of unemployment benefits inconsistent with a claim of disability during the same period. *Parsons v. Astrue*, 5:06CV217RSEMT, 2008 WL 539060 (N.D. Fla. Feb. 22, 2008) (finding plaintiff's desire to return to and attempts to work after alleged onset of disability inconsistent with disability); *see also Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161–62 (9th Cir. 2008) (acknowledging that "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime"); *Workman v. Comm'r of Soc. Sec.,* 105 F. App'x 794, 801–02 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent," and that inconsistency can be considered in evaluating the claimant's credibility.); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994) (finding claimant's signing unemployment benefits documents stating that he was capable of working inconsistent with claim of disability during same period). Thus, the ALJ properly considered Plaintiff's receipt of unemployment benefits as one factor in his analysis of Plaintiff's credibility.

Plaintiff's reliance on the memorandum of the Chief Administrative Law Judge for the Social Security Administration is unavailing. (Doc. 15, p. 20). While the memo clarifies that "receipt of unemployment does not preclude the receipt of Social Security disability benefits," here, the ALJ did not discredit Plaintiff's subjective complaints solely due to his receipt of unemployment benefits. Instead, the ALJ relied on a combination of factors, including medical records, Plaintiff's testimony regarding his activities, and the receipt of unemployment benefits, to reach his conclusion to deny disability benefits.

Accordingly, the ALJ articulated explicit and adequate reasons, based on substantial evidence, for discrediting Plaintiff's subjective complaints. The ALJ considered the objective medical evidence, Plaintiff's testimony about his daily activities, and his receipt of unemployment

benefits in reaching the conclusion that Plaintiff's impairments were not as limiting as he claimed.

### IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be **AFFIRMED**.

**DONE AND ENTERED** in Ocala, Florida, on October 16, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

District Judge

All Counsel